*1082 OPINION.
Graupner:
The question for our decision is this: Did the taxpayers receive income from the transactions set forth in the findings and therefore become liable for a tax thereon? We are confronted *1083 with a disguised dividend, and, in order to solve tbe question before us, must seek tbe true intent through tbe maze of inconsistencies existing between tbe minutes, tbe books of account, and tbe actions of the officers and directors of the company.
If we were to rely upon the records of the company as contained in tbe minute books alone we would of necessity be compelled to sustain the Commissioner. However, the situation in this appeal is like unto the conditions existing before the courts in Eisner v. Maoomher, 252 U. S. 189, and, as in that case, we must have regard for the very truth of the matter and look to substance rather than form to reach a conclusion as to the merits of the taxpayers’ contentions. If the dividend was, as a mater of actuality, a stock dividend, it can not be taxed as income, as the Commissioner in these cases seeks to do. Towne v. Eisner, 245 U. S. 418; Eisner v. Macomber, 252 U. S. 189.
What are the actual facts of the entire transaction within the corporation under which the Commissioner seeks to tax the two taxpayers involved herein? After the company declared its stock dividend in 1916 it still had a large surplus, which increased from month to month. Its financial agents desired that some of this surplus should be capitalized in order to facilitate the disposal of the company’s short-term notes, through the sale of which it borrowed money for the business. These agents advised the declaration of another stock dividend of $750,000 in order to accomplish this purpose. The officers and guiding employees of the- company did not want the publicity which the former stock dividend had occasioned and which they believed detrimental to the company’s interests, nor did the stockholders wish to pay large income taxes on a dividend payable in one year. A plan was devised for a dividend which, outwardly, would appear as two special cash dividends, payable in two different years, but which was thoroughly understood by the holders of 92 per cent of the stockholders to be only a stock dividend. These stockholders knew that they would pay no money for the stock and would receive no money from the dividend, but that they would receive their pro rata of the 7,500 shares of stock, while the $750,000 would be transferred from “ Surplus account ” to “ Capital stock account,” on the books of the company. The actions of the officers and directors, as expressed in the minutes and notices sent to the stockholders, are inconsistent with actual happenings, but are consistent with the plan to give the stock dividend the appearance of being something else.
Approximately 8 per cent of the stockholders (those not within the controlling force of corporation) paid in cash for their pro rata of the 7,500 shares. They were nominally paid two dividends of *1084 $12.50 each on all of the stock owned by them, but, as a matter of fact, they were repaid the money which they had paid in and thus had their stock for nothing. The holders of approximately 92 per cent of the shares (the operating majority) paid nothing and received nothing but their pro rata of the 7,500 shares of stock. The sum of $750,000 was transferred from surplus to capital stock, with a corresponding issue of stock certificates, and the plan of the controlling factors of the company was accomplished. Nothing was given to the stockholders which they had not theretofore had. The company still had the $750,000 and the stockholders merely had an increase in the number of pieces of paper, which represented the same proportionate interest in the property of the corporation that their original holdings did.
The fact that the officers of the company sought to delude the public or to distribute over two taxable years what they feared would be taxed in one year can not influence us in deciding these appeals upon their merits. We must take the actual results and, in their light, interpret the liability of each of the taxpayers. The situation existing in these appeals is well described in the language of Mr. Justice Pitney in the prevailing opinion of Eisner v. Macomber, 252 U. S. 189, where he says:
The essential and controlling fact is that the stockholder has received nothing out of the company’s assets for his separate use and benefit; on the contrary, every dollar of his original investment, together with whatever accretions and accumulations have resulted from employment of his money and that of the other stockholders in the business of the company, still remains the property of the company, and subject to business risks which may result in wiping out the entire investment. Having regard to the very truth of the matter, to substance and not to form, he has received nothing that answers the definition of income within the meaning of the Sixteenth Amendment.
See also Towne v. Eisner, supra.
The foregoing language applies to the facts in these appeals and is determinative of the issues involved.
Smith not participating.